NARRAGANSETT PIER RAILROAD COMPANY *vs.* LEROY W. PALMER.

SAME *vs.* CHARLES B. CLARKE.

JULY 14, 1944.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J. These are two actions of debt on bond, which were tried together to a jury in the superior court. Since each case presents the same questions, we will treat them as if there were only one case before us, but our decision will apply in each case. The jury returned a verdict for the defendant. Thereafter the plaintiff's motion for a new trial was granted by the trial justice. The case is now before us on bills of exceptions by both plaintiff and defendant.

Both parties press exceptions to the denial of their respective motions for a directed verdict and to rulings on evidence. The plaintiff also presses an exception to the refusal of the trial justice to charge as requested, while the defendant presses his exception to the granting of a new trial.

It appears from the evidence that, in 1924, Myron L. Sherman was plaintiff's station agent at Wakefield, Rhode Island; that he was then called upon to give a bond for the faithful performance of his duties; and that the bond in question, in the penal sum of $5000 and dated July 10, 1924, was furnished, with LeRoy W. Palmer and Charles B. Clarke, the present defendants, as sureties thereon. It further appears that when Sherman was discharged, in

May 1940, there was a shortage in his accounts of $10,-278.36.

The pertinent provisions of the bond are as follows: The parties thereto bind themselves, their heirs, executors and administrators "unto the Narragansett Pier Railroad Company, a Rhode Island corporation, its successors and assigns." The condition of the bond is that the obligors "shall at all times hereafter keep indemnified the said Railroad Company, its successors and assigns, against any or all loss of money, securities or personal property belonging to said *Railroad Company* or in its possession or for which it is responsible as common carrier, bailee, warehouseman, or otherwise, sustained by said *Railroad Company*" through the dishonesty or culpable negligence of Sherman "whilst said employee holds the said position of station agent at Wakefield, or otherwise . . . ." (italics ours) The bond also provides that either or both of the sureties might, at their election and at any time, terminate their obligation under the bond upon giving written notice to the railroad company. No such notice was ever given by either of the defendants.

On January 31, 1936, one Joseph A. Monahan was appointed temporary receiver of the plaintiff by the superior court. He was confirmed as permanent receiver on February 17, 1936. In each instance the decree of appointment grants him the power to operate the business of the plaintiff and to employ agents and servants to assist him therein. Sherman's employment by the plaintiff was under a contract of hiring for an indefinite period. The receiver retained Sherman as station agent. It is clear that, during the receivership, Sherman was paid by the receiver and that he at all times acted under the orders and at the direction of the receiver. The receivership was terminated on December 31, 1937, at which time Sherman was allowed to continue as station agent by the plaintiff.

The shortage of $10,278.36 in Sherman's accounts was established by an audit of his books and papers in May 1940.

The competency of the auditor and the accuracy of the audit are unchallenged in the record before us. The auditor testified that he found Sherman's accounts in proper order until a few months following the appointment of the receiver. Thereafter, according to this witness, Sherman manipulated his accounts by resorting to devious ways and practices which we need not specify, but which, unless explained, were, in our opinion, clearly inconsistent with an honest and careful accounting by Sherman of the moneys that came into his possession or control as station agent.

With the exception of a deputy clerk of the superior court who produced certain court papers in connection with the receivership, Sherman was the only witness for the respective defendants. Other than denying in general terms that he did not steal, embezzle, or lose through culpable negligence any of the plaintiff's money, he gave no explanation whatever in justification of his conduct as station agent for the period covered by the audit.

The evidence in this case presents no question of fact for determination by a jury. The only reasonable conclusion that can be drawn therefrom is that the shortage shown by the audit was clearly due to Sherman's dishonest or negligent conduct. Whether the surety is bound to indemnify the plaintiff for such loss depends upon the extent of the surety's liability as set forth in the bond. This question of law was properly raised by the motions for a directed verdict by both plaintiff and defendant, which motions the trial justice heard and denied. We will therefore first consider the exceptions of the parties on this point.

Proceeding on the theory that the receiver was a successor of the plaintiff within the terms of the bond, the plaintiff contends that the bond, as written, obligates the surety to indemnify the plaintiff for any and all loss sustained by it because of Sherman's dishonest or negligent conduct during the entire period covered by the audit. The defendant, on the other hand, contends that a verdict should have been directed in his favor for the following reasons: First, that

defendant's obligation on the bond was terminated when the receiver was appointed, at which time Sherman ceased to be an employee of the plaintiff and became an employee of the receiver. Therefore any defalcation by Sherman during the receivership would not constitute a breach of the condition of the bond; secondly, that the reemployment of Sherman by the plaintiff at the termination of the receivership did not revive the obligation of the defendant on the bond so as to render him responsible for defalcations occurring subsequently to such reemployment.

The determination of the question thus presented to us rests upon the true construction of the bond in accordance with the rule, which has been followed by this court, that the bond must be strictly construed. In the absence of ambiguity, the extent of the liability of the surety on a common-law bond is determined solely by the language of the bond. Construction by implication, which will extend the surety's liability, is not permissible in such a case. *Andrews* v. *Indemnity Ins. Co. of N. A.,* 55 R. I. 341; *Wilson* v. *Fisk,* 22 R. I. 100.

There is no doubt that the bond under consideration obligates the surety to the "Railroad Company, its successors and assigns", and that he undertakes to indemnify the "Railroad Company, its successors and assigns." But what is the extent of the liability that the surety has thus assumed? The answer to this question is found in the condition of the bond, where the omission of the words "successors and assigns" in connection with the extent of the surety's liability is of vital significance. The extent of the surety's obligation, as therein set forth, is to indemnify the railroad company against loss of money or personal property of the "Railroad Company or in its possession" or for loss "sustained by said Railroad Company", as a common carrier.

It is not within our province to interpolate by implication words in this bond, as it was advisedly written in plain language by the parties themselves. Had they intended to render the surety liable for Sherman's improper conduct

while in the employ of the "successors and assigns" of the railroad company, it would have been natural for them to adopt that term in describing the extent of the surety's liability on the bond. In our judgment the failure to use the term "successors and assigns" immediately after the words "Railroad Company" in the two instances above mentioned was with the intent and for the purpose of limiting the liability of the surety on the bond. .

Whoever prepared the bond did not lack the ability to limit or enlarge the surety's liability, as desired. For example, when it was necessary to describe the place and character of Sherman's employment that the bond was to cover, the language of the bond is that the surety shall be bound "whilst said employee holds the said position of station agent at Wakefield, *or otherwise* . . . ." (italics ours) When the bond is carefully read in its entirety, as written, without interpolating words therein by way of implication in that part of the condition which directly affects the extent of the surety's liability, it is plain to us that the surety is bound to indemnify the railroad- company, its successors and assigns, but *only* for loss sustained by the *railroad company itself* while Sherman was in *its* employ and no more; and further, that, according to the express language of the bond, a successor could recover *only* for such loss so sustained by the railroad company. .

In view of our construction of the bond, we need not consider the few and conflicting authorities that throw some light on the question of whether a receiver is the successor of a corporation in receivership. See *Missouri, K. & T. Ry. Co.* v. *Hudson,* 71 Okla. 157; *Chilletti* v. *Missouri, K. & T. Ry. Co.,* 102 Kan. 297; *Daube* v. *Philadelphia & R. Coal & Iron Co.,* 77 Fed. 713, reversing *Philadelphia & R. Coal & Iron Co.* v. *Daube,* 71 Fed. 583; *United States* v. *Bailey,* 178 Fed. 302. It is undisputed that the plaintiff here sustained no loss through Sherman's dishonest or negligent conduct prior to the appointment of the receiver. Since the surety is liable only for loss sustained by the plaintiff and there was

none before the receiver was appointed, it is immaterial in the circumstances of this case whether the receiver was or was not a successor of the plaintiff corporation. We therefore express no opinion on the point.

In the argument to us plaintiff also urged that the surety should at least be held liable for the loss which it sustained subsequently to the termination of the receivership. This contention, which is neither briefed nor supported by authority, rests on plaintiff's interpretation of the bond and on the further fact that the surety had not given written notice of his election to terminate his obligation under the bond, as therein provided.

We find no merit in this contention. The receivership caused a material change in the conditions under which the bond was executed, and it terminated the liability of the surety for any future defalcations by Sherman. In this situation the obligation of the surety under the bond could not be revived without his consent and there is no evidence of such consent. Furthermore, the fact that the surety did not give the above-mentioned notice is of no avail to the plaintiff. A privilege for the protection of the surety cannot be turned into a burden to his detriment.

On our view of the extent of the surety's liability on the bond, we are of the opinion that defendant's motion for a directed verdict should have been granted, and that the similar motion by the plaintiff was properly denied. Defendant's exception to the denial of such motion is sustained in each case. In view of this conclusion, it is unnecessary to consider the other exceptions of either party.

On October 2, 1944, the plaintiff may appear before this court and show cause, if any it has, why each case should not be remitted to the superior court with direction to enter judgment for the defendant in each case.

*Charles E. Tilley, Eugene J. Phillips, Swan, Keeney & Smith,* for plaintiff.

*Percy W. Gardner, Ada L. Sawyer, Edward W. Day,* for defendants.