MARSHALL CONTRACTORS, INC.

v.

PEERLESS INSURANCE CO.

No. Civ. A. 92–0042–T.

United States District Court,
D. Rhode Island.

Aug. 23, 1993.

---

**17.** *See* Docket no. 54, Statement of undisputed material facts, exhibit D.

Mark E. Haddad, Andrew Hodgkin, John A. Wortmann, Jr., Brown, Rudnick, Freed & Gesmer, Providence, RI, for plaintiff.

C. Russell Bengtson, Carroll, Kelly & Murphy, Providence, RI, D. Wayne Olson, Jr., Robert E. Morris, Tampa, FL, for defendant.

## MEMORANDUM AND ORDER

TORRES, District Judge.

This is a suit on a performance bond issued by Peerless Insurance Company ("Peerless") to Marshall Contractors, Inc. ("Marshall") guaranteeing the performance of one of Marshall's subcontractors, VT Properties, Inc. ("VT"). It is presently before the Court for consideration of Marshall's motion for partial summary judgment in the form of a declaration that "Peerless is obligated as a matter of law to pay consequential damages under the performance bond." That motion is denied for reasons set out below.

### FACTS

Marshall is a Rhode Island corporation that was hired as the general contractor to construct housing at the Hurlburt Field Air Force Base in Fort Walton Beach, Florida. Marshall subcontracted certain carpentry, roofing and finish work to VT, a Georgia corporation. Pursuant to the terms of the subcontract, VT obtained a performance bond insuring that its work would be properly completed. The bond, in the amount of $3,478,828.00, was provided by Peerless, a New Hampshire corporation, through its Georgia office.

On November 21, 1991, Marshall declared VT in default and demanded that Peerless complete the work covered by the subcontract. When Peerless failed to make arrangements satisfactory to Marshall, Marshall completed the work itself and brought this suit.

Count I of the complaint alleges that Peerless breached its obligation "to remedy any defaults in VT's performance, to complete VT's work in a timely and workmanlike manner, and to otherwise compensate Marshall for damages which it incur[red] as a result of VT's default." It seeks "damages including costs expended to complete the contract work, increased overhead and other delay expenses ... additional claims from both the owner and various project subcontractors, and ... other consequential losses." Count II alleges that Peerless wilfully and in bad faith failed to comply with its obligations under the performance bond and seeks "all resulting damages without limitation by the penal sum of the Bond."

As already noted, Marshall has moved for partial summary judgment to the effect that, under the performance bond, Peerless is liable for any "consequential" damages sustained by Marshall as a result of VT's alleged default. Peerless contends that such a claim is not properly the subject of a motion for summary judgment. Moreover, as set forth in its answer, Peerless asserts that it is not liable for consequential damages occasioned by VT's default.

## DISCUSSION

### I. *Appropriateness of Partial Summary Judgement*

Federal Rule of Civil Procedure 56 allows a party seeking to recover on a claim, counterclaim or crossclaim, or a party against whom a claim, counterclaim or cross-claim is asserted to move for summary judgement "upon all or any part of thereof." Fed.R.Civ.P. 56(a) and (b). The rule also expressly provides for an interlocutory summary judgement "on the issue of liability alone although there is a genuine issue as to the amount of damages." Fed.R.Civ.P. 56(c).

The purpose of partial summary judgment is to expedite litigation and promote judicial economy by resolving, in advance of trial, matters that do not turn on disputed questions of fact. That purpose is not served by using Rule 56 as a vehicle for obtaining rulings on issues that may never have to be addressed. On the contrary, using Rule 56 in that manner could prolong the proceedings and cause judicial resources to be expended needlessly. Furthermore, "partial summary judgments" with respect to questions the existence of which depend upon the resolution of controverted matters would be tantamount to advisory opinions. *See e.g., Flast v. Cohen,* 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968) ("The oldest and most consistent thread in the federal law of justiciability is that federal courts will not give advisory opinions.")

In this case, Marshall is not entitled to any "judgment" for "consequential" damages because Peerless' liability under the bond has not yet been determined. Peerless expressly denies that it has breached its obligations under the bond.

In addition, Marshall has failed to establish the precise nature or amount of its "consequential" damages. It merely describes those damages generically as increased overhead, other delay expenses, and other consequential losses. In short, the relief it seeks is so vague that it cannot be the subject of a partial summary "judgment." Unless and until Marshall prevails on the liability issue and establishes the exact nature and amount of its "consequential" damages, no "judgment" or "partial judgment" can be entered in Marshall's favor.

The contingent nature of the partial summary "judgment" Marshall seeks with respect to *damages* makes it readily distinguishable from the type of partial summary judgment on *liability* contemplated by Rule 56(c). Determining liability (or the absence of liability) is a necessary step in adjudicating a lawsuit. By contrast, damages issues need not be dealt with unless liability is established. Therefore, addressing damages questions before that juncture may be a waste of judicial time.

### II. *Derivative Liability Under the Performance Bond*

Even if Marshall's motion raises an issue that could be resolved via partial summary judgement, the motion fails on its merits.

The nature and extent of a surety's liability on a performance bond is governed

by the terms of the bond. *Narragansett Pier R.R. Co. v. Palmer*, 70 R.I. 298, 302, 38 A.2d 761 (1944); *see also American Home Assurance Co. v. Larkin General Hospital Ltd.*, 593 So.2d 195, 197–198 (Fla.1992). Unless the parties have agreed otherwise, the determination as to what law should be consulted in construing the terms of the performance bond and in determining the effect of those terms must be made in accordance with the choice of law rules of the state in which the district court sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941) (In diversity cases, the federal courts look to the choice of law rules of the forum state.).

■ In contract cases, Rhode Island follows the choice of law rules set forth in the Restatement (Second) of Conflict of Laws. *Montaup Elec. Co. v. Ohio Brass Corp.*, 561 F.Supp. 740, 744–745 (D.R.I.1983); *Busby v. Perini Corp.*, 110 R.I. 49, 51, 290 A.2d 210 (1972). Restatement § 194 provides that, where the parties have failed to designate which law applies, a contract of suretyship (e.g., a performance bond) is to be construed in accordance with "the law governing the principal's obligation which the contract of suretyship was intended to secure, *unless,* with respect to the particular issue, some other state has a more significant relationship ... to the transaction and the parties, in which event the local law of the other state will be applied." Restatement (Second) of Conflict of Laws, § 194 (emphasis added).

■ In this case, there is no choice of law provision in the performance bond. However, the subcontract between Marshall and VT expressly states that "This Agreement shall be governed by the laws of the State of Rhode Island". Subcontract Agreement,

¶ 11.5. Therefore, unless the "proviso" clause of § 194 requires a different result, Rhode Island law applies.

Here, there is no need to assess the interests other states may have in the transaction because, under the Restatement, the fact that Marshall is a Rhode Island corporation having its principal place of business in this state is sufficient to justify the application of Rhode Island law. Restatement § 194 cmt. c states that "[a] sufficient relationship to justify application of the law governing the principal obligation [does] exist if the state whose local law governs the obligation was ... (4) the state of domicil of either the creditor or the surety." In this case, Marshall is the creditor, and it is a domiciliary of Rhode Island.

■ Under Rhode Island law, a performance bond must be strictly construed.

In the absence of ambiguity, the extent of the liability of the surety on a common-law bond is determined solely by the language of the bond. Construction by implication, which will extend the surety's liability, is not permissible in such a case.

*Narragansett Pier R.R. v. Palmer*, 70 R.I. 298, 302, 38 A.2d 761 (1944) (citations omitted).

■ In this case, the performance bond clearly sets forth Marshall's remedies and Peerless' liabilities in the event of default by VT. It provides for any default to be remedied by Peerless or, alternatively, by Marshall, after reasonable notice to Peerless. In either event, the balance of the subcontract price is credited against the cost of completing the work and Peerless' liability is limited to the amount of the bond.[1]

---

1. The performance bond states:

"Whenever Principal shall be, and be declared by Obligee to be in default under the subcontract, the Obligee having performed Obligee's obligations thereunder:

(1) Surety may promptly remedy the default, subject to the provisions of paragraph 3 herein, or;

(2) Obligee after reasonable notice to Surety may, or Surety upon demand of Obligee may arrange for the performance of Principal's obligation under the subcontract subject to the provisions of paragraph 3 herein;

(3) The balance of the subcontract price ... shall be credited against the reasonable cost of completing performance of the subcontract. If completed by the Obligee, and the reasonable cost exceeds the balance of the subcontract price, the Surety shall pay to the obligee such excess, but in no event shall the aggregate liability of the Surety exceed the amount of this bond. If the Surety arranges completion or remedies the default, that portion of the balance of the subcontract price as may be required to complete the subcontract or remedy the default and to reimburse the Surety for its outlays shall be paid to

The bond makes no provision for consequential damages. On the contrary, it makes the measure of Peerless' liability the amount by which the *cost of completion* exceeds the unpaid balance of the contract price. That provision comports with the general principle that the purpose of a performance bond is to guarantee that the work in question will be completed. *See, e.g., American Home Assurance Co.,* 593 So.2d at 198. Unlike an insurance policy, a performance bond is not intended to compensate for indirect losses or to indemnify against liability to others. In any event, under the rule set forth in *Narragansett Pier,* the Court may not expand the scope of Peerless' liability by re-writing the plain language of the bond.

 Of course, that does not necessarily relieve Peerless from liability for consequential damages attributable to *its own* alleged breach of the performance bond. Nor does it necessarily limit any such liability to the penal sum of the bond.[2]

Courts have differed as to whether an insurer is liable for consequential damages for breaching an insurance contract. Some have held such damages are recoverable under an insurance contract to the same extent that they would be recoverable under any other contract. *See Wiggins v. North America Equitable Life Assur. Co.,* 644 F.2d 1014, 1017, n. 1 (4th Cir.1981) (Maryland law); *Asher v. Reliance Ins. Co.,* 308 F.Supp. 847 (N.D.Cal.1970) (Alaska law); *Mohr v. Dix Mut. County Fire Insurance Co.,* 143 Ill. App.3d 989, 97 Ill.Dec. 831, 836, 493 N.E.2d 638, 643 (1986); *Lawton v. Great Southwest Fire Ins. Co.,* 118 N.H. 607, 392 A.2d 576 (1978); *Reichert v. General Ins. Co.,* 59 Cal. Rptr. 724, 428 P.2d 860 (Cal.1967) (California law). On the other hand, some courts have held that consequential damages are not recoverable for breach of an insurance con-

tract. *Polito v. Continental Cas. Co.,* 689 F.2d 457, 461 (3rd Cir.1982) (an insured "is generally denied consequential damages for [the insurer's] failure to pay the loss, because in a suit for money due under a contract, recovery is limited to the debt plus interest."); *Bibeault v. Hanover Ins. Co.,* 417 A.2d 313, 318 (R.I.1980) ("Traditionally, recovery in contract for breach of a unilateral or independent obligation to pay a certain sum of money is confined to the actual amount owed under the contract plus legal interest."). *See also* Appleman, Insurance Law and Practice §§ 8877–8879 (1981) (discussing the different approaches courts have taken on this issue).

It would appear that, absent liability for consequential damages resulting from its own delinquency, the surety on a performance bond would have little incentive to fulfill its obligations in a timely fashion. On the contrary, the surety likely would be tempted to delay its performance in the hope of extracting a favorable settlement from the bondholder faced with mounting consequential losses. However, this Court need not and should not decide the question at this time because it was not raised by the instant motion.

## CONCLUSION

For all of the foregoing reasons, the plaintiff's motion for partial summary judgment is denied.

## IT IS SO ORDERED.

the Surety at the times and in the manner as said sums would have been payable to Principal had there been no default under the subcontract."

2. Rhode Island Gen. Laws § 9–1–33 (1985) expressly authorizes an insured to recover damages for bad faith refusal to pay a claim under an insurance policy. *See also Bartlett v. John Hancock Mut. Life Ins. Co.,* 538 A.2d 997, 1000 (R.I.1988). When a claim sounds in both contract and tort, the insured may recover conse-

quential damages for economic loss, and, where appropriate, damages for emotional distress and punitive damages. *Bibeault v. Hanover Ins. Co.,* 417 A.2d 313, 319 (R.I.1980). Furthermore, in the case of performance bonds, recovery is not limited to the amount of the bond. *See e.g., Mello v. General Ins. Co.,* 525 A.2d 1304 (R.I. 1987) (allowing assignment of a bad faith claim for the amount of judgment in excess of the policy limits).