April 19, 2023

**Supreme Court**

No. 2021-135-Appeal.
(PC 10-5654)

Apex Development Company, LLC :

v. :

State of Rhode Island Department of :
Transportation

v. :

S&R/Pihl, A Joint Venture, LLC, et al. :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Apex Development Company, LLC    :

v.    :

State of Rhode Island Department of    :
Transportation

v.    :

S&R/Pihl, A Joint Venture, LLC, et al.    :

Present: Suttell, C.J., Goldberg, Robinson, and Lynch Prata, JJ.

## O P I N I O N

**Chief Justice Suttell, for the Court.** The defendant and third-party plaintiff,

the Rhode Island Department of Transportation (RIDOT), appeals from a final

judgment entered pursuant to Rule 54(b) of the Superior Court Rules of Civil

Procedure in favor of the third-party defendants, Western Surety Company and the

Insurance Company of the State of Pennsylvania (collectively the sureties).[1] The

issues raised by RIDOT in this appeal concern the scope of the sureties' liability

under a performance and payment bond issued in conjunction with a public works

project (the bond). For the reasons set forth herein, we affirm the Superior Court's

---

[1] The plaintiff, Apex Development Company, LLC, and third-party defendant
S&R/Pihl, A Joint Venture, LLC, are not parties on appeal.

- 1 -

grant of summary judgment and correlative final judgment in favor of the sureties and its denial of RIDOT's cross-motion for partial summary judgment.

## I

## Facts and Travel

On October 7, 2010, RIDOT contracted with S&R/Pihl, A Joint Venture, LLC (S&R/Pihl), for the reconstruction of a portion of I-95 running through Pawtucket, Rhode Island. Specifically, S&R/Pihl was to reconstruct the Pawtucket River Bridge and surrounding road infrastructure (the project). Pursuant to Rhode Island law and the terms of the principal contract (the contract), S&R/Pihl was required to provide a payment and performance bond to RIDOT. *See* G.L. 1956 § 37-12-1.[2] In accordance with this statutory and contractual requirement, on October 7, 2010, S&R/Pihl obtained the bond from the sureties in the penal amount of $80,663,537.70.

In preparation for the project, RIDOT had previously condemned and obtained easements over certain property owned by Apex Development Company, LLC (Apex). Under the terms of the contract, S&R/Pihl was prohibited from parking construction equipment outside of the designated easement area. S&R/Pihl was also responsible for obtaining lawful access to the job site and costs associated with obtaining access.

---

[2] The relevant language of G.L. 1956 § 37-12-1 appears *infra*.

On October 26, 2011, RIDOT informed S&R/Pihl by letter that it was violating the terms of its contract with RIDOT by trespassing on Apex's property and requested that it cease any trespassing immediately. The record does not include any additional communication between RIDOT, S&R/Pihl, or the sureties regarding this alleged violation. On September 20, 2013, S&R/Pihl notified RIDOT that it considered the project "substantially complete." Thereafter, RIDOT conducted a final inspection, S&R/Pihl completed punchlist and warranty work, and on June 20, 2014, the last S&R/Pihl employee charged labor hours to the project.

Apex originally brought this action against RIDOT on September 27, 2010, alleging an unlawful taking of the easements. In 2013, Apex filed a first amended complaint against RIDOT, adding a second count for trespass. On October 30, 2019, Apex filed a second amended complaint against RIDOT—the operative complaint—alleging that, from September 28, 2009, until approximately March 27, 2014, RIDOT and its contractors trespassed and damaged Apex's private property.

In February 2014, RIDOT filed a third-party complaint against S&R/Pihl for indemnification and in November 2019, RIDOT filed an amended third-party complaint against S&R/Pihl and, for the first time, the sureties, alleging that, "[i]n the event this Court finds the State liable in any respect for any count asserted in

Apex's Second Amended Complaint against the State, the State is entitled to full indemnity and contribution" from S&R/Pihl and the sureties.[3]

Subsequently, the sureties filed a motion for summary judgment. RIDOT filed an objection and a cross-motion for partial summary judgment on the issue of the sureties' obligation to indemnify. A hearing on the motions was held before a justice of the Superior Court on January 25, 2021. The parties agreed that there were no genuine issues of material fact.

At the hearing, the sureties argued that the bond applied only to direct construction costs and not to third-party damages. In addition to challenging their liability under the bond, the sureties also argued that any obligation under the bond became null and void upon substantial completion of the project, and, even if it did not, their obligation under the bond was conditioned upon S&R/Pihl's default and RIDOT's notice to the sureties.

In response, RIDOT argued that under the contract, S&R/Pihl was responsible for all claims brought against RIDOT due to any act and/or omission of S&R/Pihl or its subcontractors. RIDOT asserted that the sureties' interpretation of the bond

---

[3] RIDOT's "Standard Specifications for Road and Bridge Construction" (the Blue Book) is incorporated into the contract and requires S&R/Pihl to "defend, indemnify and hold harmless the State, the Department, its officers and employees, from any and all suits, actions, claims, losses, expenses, damages and any and all other liabilities of any character resulting in any injuries or damage to any person, entities, or property arising out of * * * any act and/or omission of the Contractor or its subcontractors, in performance of work covered by the Contract * * *."

was too narrow. RIDOT emphasized that, unlike some private bonds, the public works bond in this case is very expansive. According to RIDOT, the bond covered all of the contractor's responsibilities under the contract—including indemnifying RIDOT. It also contended that there was no time limit on presenting a claim to the sureties other than the ten-year statute of limitations for civil claims. Instead, RIDOT argued that the sureties' liability extended through compliance with all contract terms. RIDOT additionally submitted that the sureties' responsibility to defend and indemnify RIDOT was triggered when S&R/Pihl trespassed in violation of the contract.

On March 17, 2021, the hearing justice issued a written decision granting the sureties' motion for summary judgment and denying RIDOT's cross-motion for partial summary judgment. Final judgment under Rule 54(b) entered on April 13, 2021. RIDOT filed a timely notice of appeal on April 30, 2021.

## II

## Standard of Review

"This Court will review the grant of a motion for summary judgment *de novo*, employing the same standards and rules used by the hearing justice." *Nelson v. Allstate Insurance Company*, 228 A.3d 983, 984-85 (R.I. 2020) (quoting *JHRW, LLC v. Seaport Studios, Inc.*, 212 A.3d 168, 175 (R.I. 2019)). "We will affirm a trial court's decision only if, after reviewing the admissible evidence in the light most

favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Id.* at 985 (quoting *Seaport Studios, Inc.*, 212 A.3d at 175). "Furthermore, the nonmoving party bears the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions." *Id.* (quoting *Seaport Studios, Inc.*, 212 A.3d at 175).

## III

### Discussion

On appeal, RIDOT contends that the hearing justice erred by granting the sureties' motion for summary judgment and denying RIDOT's cross-motion for partial summary judgment. In particular, RIDOT asserts that the plain language of the bond, the bond statute, and the contract requires the sureties to indemnify RIDOT for any claims that arise from S&R/Pihl's failure to abide by the terms of the contract, including third-party tort claims. Further, RIDOT argues that the sureties are bound to perform under the bond, notwithstanding RIDOT's failure to declare S&R/Pihl in default of the contract and to provide notice to the sureties before the project has been substantially completed.

In Rhode Island, every general contractor who contracts with the state for the construction or repair of any public road or bridge in which the contract price is in

excess of fifty thousand dollars is required "to furnish to [RIDOT] a bond * * * in a sum not less than fifty percent (50%) and not more than one hundred percent (100%) of the contract price * * *."[4] Section 37-12-1.

A suretyship is a contractual tripartite relationship in which the surety agrees to guarantee the principal's promise to perform for the obligee if the principal fails to satisfy its obligations. *See Rhode Island Hospital Trust National Bank v. Ohio Casualty Insurance Company*, 789 F.2d 74, 77 (1st Cir. 1986); *see also* 74 Am. Jur. 2d *Suretyship* § 1 (Feb. 2023 Update). In Rhode Island, a bond must be "strictly construed." *Narragansett Pier Railroad Co. v. Palmer*, 70 R.I. 298, 302, 38 A.2d 761, 763 (1944). In the absence of ambiguity, "[c]onstruction by implication, which will extend the surety's liability, is not permissible * * * ." *Id.* Furthermore, when a bond refers to and is conditioned upon the contractor's performance of a specific agreement, the principal contract becomes a part of the bond and "the instruments should be read together as a whole." *Paisner v. Renaud*, 149 A.2d 867, 869 (N.H. 1959); *see Glens Falls Indemnity Co. v. American Awning & Tent Co.*, 55 R.I. 284, 288, 180 A. 367, 369 (1935) ("A proper understanding of the scope of the bond, and of the obligation it imposes, cannot be had without reading the contract and the bond, and construing them together.").

---

[4] Section 37-12-1 was amended in 2019 and now requires bonds to be furnished for contracts in excess of one hundred and fifty thousand dollars. *See* § 37-12-1, as amended by P.L. 2019, ch. 60, § 1 and P.L. 2019, ch. 72, § 1.

To be sure, Rhode Island caselaw expounding upon the precepts of suretyship is not extensive. We agree, however, with the United States District Court for the District of Rhode Island in pronouncing "the general principle that the purpose of a performance bond is to guarantee that the work in question will be completed. * * * Unlike an insurance policy, a performance bond is not intended to compensate for indirect losses or to indemnify against liability to others." *Marshall Contractors, Inc. v. Peerless Insurance Co.*, 827 F. Supp. 91, 95 (D.R.I. 1993).

The bond under review in this case is entitled "Contract Bond for Complete Performance and Full Payment." Under its terms, the sureties "are held and firmly bounden unto the State in the penal sum of [$80,663,537.70]" the precise amount of the contract price for completion of the project. The obligation of the sureties is conditional: If the contractor "shall in all things well and truly keep and perform the covenants, conditions and agreements in the [c]ontract * * * and shall indemnify and save harmless the State * * * and shall also promptly pay for all such labor performed or furnished and for all such materials and equipment furnished, * * * then this obligation shall become and be null and void; otherwise it shall be and remain in full force and virtue."[5]

---

[5] The bond is presented in conditional "defeasance" language to "assure[] that the bond obligation becomes void upon performance without need for express cancellation of the bond, and confirms that the bond obligation is coextensive with the contractor's obligation under the bonded contract." 4A Philip L. Bruner &

Certain conditions upon S&R/Pihl are also set forth in Section 108.09 of RIDOT's "Standard Specifications for Road and Bridge Construction" (the Blue Book), which was incorporated into the construction contract. Significantly, Section 108.09(a)(11) provides that if the contractor

> "[f]ails to carry on the work in an acceptable manner in accordance with the Contract requirements; the Engineer may declare the Contractor to be in default of the Contract and shall give notice in writing to the Contractor and the Surety of such default, advising the Contractor of actions required to remedy said default."

After examining the bond and the various documents which are incorporated in the contract, we are of the opinion that RIDOT's efforts to seek indemnification from the sureties for any damages in which RIDOT may be found liable as a result of S&R/Pihl's trespass must fail because RIDOT did not notify the sureties in a timely manner that S&R/Pihl "[f]ail[ed] to carry on the work in an acceptable manner in accordance with the Contract requirements[.]"

In order to trigger a surety's obligation to perform under a bond, it must first have notice of the principal's default or breach. "The purpose of the obligee giving the surety 'notice of default' is to permit the surety to review its options under the bond in order to minimize its liability." 4A Philip L. Bruner & Patrick J. O'Connor, Jr., *Bruner & O'Connor on Construction Law* § 12:36 (July 2022 Update). Here,

---

Patrick J. O'Connor, Jr., *Bruner & O'Connor on Construction Law* § 12:14 (July 2022 Update).

RIDOT and the sureties do not dispute that, if S&R/Pihl parked its equipment outside of the easement zone in contravention of the contract specifications, S&R/Pihl would have therefore "[f]ail[ed] to carry on the work in an acceptable manner in accordance with the Contract requirements[.]" The record is, however, devoid of any type of notice to the sureties regarding S&R/Pihl's breach or Apex's claim against RIDOT. Although RIDOT sent S&R/Pihl's senior project manager written notice of S&R/Pihl's "violation of the [p]ermanent and [t]emporary [a]ccess [e]asements" in 2011, such notice was never provided to the sureties. Furthermore, even after S&R/Pihl notified RIDOT that it considered the project substantially complete and requested a final inspection, the record lacks any evidence that RIDOT ever notified the sureties that there were claims arising out of S&R/Pihl's alleged trespass. Indeed, it appears that the first time the sureties were made aware of the alleged trespass was when RIDOT filed its first amended third-party complaint against the sureties in 2019 seeking indemnification, more than four years after the project had been completed.

At any point between October 7, 2010, when the bond was executed, and September 20, 2013, when S&R/Pihl notified RIDOT that it considered the project "substantially complete," if the sureties had some type of notice, they could have intervened to minimize their liability for damages, including remedying the alleged trespass. We conclude that extending surety liability to cover a principal's breach,

of which the surety did not have timely notice, is unreasonable, or at best, improperly extends the sureties' liability by implication. *See Narragansett Pier Railroad Co.*, 70 R.I. at 302, 38 A.2d at 763.

We reject RIDOT's contention that the only temporal limitation on the sureties' liability under the bond is the ten-year statute of limitations for civil claims. Here, the reconstruction project was substantially completed in September 2013, RIDOT conducted a final inspection, and the project was fully completed no later than June 2014. Yet, RIDOT did not declare S&R/Pihl to be in default, nor did it give notice to the sureties, until 2019.

Under the terms of the bond, S&R/Pihl's satisfactory performance of "the covenants, conditions and agreements in the [c]ontract" and prompt payment of all labor and materials render the sureties' obligation null and void. In the absence of a declaration of default and notice thereof to the sureties, we are satisfied that the bond itself became null and void.

## IV

## Conclusion

For the reasons set forth herein, we affirm the Superior Court's grant of summary judgment in favor of the sureties and its denial of RIDOT's cross-motion for partial summary judgment. The record may be returned to the Superior Court.

Justice Long did not participate.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Apex Development Company, LLC v. State of Rhode Island Department of Transportation v. S&R/Pihl, A Joint Venture, LLC, et al. |
| **Case Number** | No. 2021-135-Appeal. (PC 10-5654) |
| **Date Opinion Filed** | April 19, 2023 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, and Lynch Prata, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Jeffrey A. Lanphear |
| **Attorney(s) on Appeal** | For Plaintiff: Myles C. Beltram, Esq. |
| | For Defendants: Thomas R. Dunn, Esq. |