NORTH SMITHFIELD TEACHERS
ASSOCIATION

v.

NORTH SMITHFIELD SCHOOL
COMMITTEE.

No. 80–460–Appeal.

Supreme Court of Rhode Island.

June 23, 1983.

Urso, Liguori & Urso, Westerly, for plaintiff.

Paul P. Baillargeon, Woonsocket, for defendant.

## OPINION

MURRAY, Justice.

This is an appeal by the North Smithfield School Committee (committee) from a judgment declaring that the North Smithfield Teachers Association (association) is entitled to be paid for the entire 1971–1972 school year according to the pay scale con-

tained in a March 30, 1971 arbitration award.

On September 1, 1970, the association and the committee entered into an agreement specifying conditions of employment for the association's members for the period from September 1, 1970, to August 31, 1972. Included in that agreement was a schedule fixing salaries at amounts in excess of those paid during the preceding school year. The agreement also gave each party the right to reopen the contract for the purpose of negotiating on economic matters concerning the 1971–1972 school year. Negotiations did occur concerning certain economic matters, but an impasse was reached. The issues were then submitted to an arbitration panel, which rendered its award on March 30, 1971.

The committee rejected the award and the 1971–1972 school year began with teachers being paid on the basis of the salary schedule of the previous year. Mediation by the Department of Education resulted in a Memorandum of Understanding executed by the parties on October 28, 1971. The memorandum states:

"The North Smithfield School Committee and the North Smithfield Teachers' Association agree to implement the Arbitration Award handed down on March 30, 1971, A. Howard Meyers, chairman.

"Said Award incorporated into a contract form effective as of September 1, 1971, for the school year 1971–1972, is to be reduced to contractual language as promptly as possible, however, no later than 20 days after ratification by each party.

"In entering into this agreement, the North Smithfield School Committee shall not engage in any recrimination, discrimination, or punishment as a result of this matter.

"Any economic terms contained in the arbitration award of March 30, 1971 shall be implemented subject to terms of the Wage-Price Stabilization Act of 1970, the Executive Order of 1971, and any subsequent Executive Orders under the Wage-Price Stabilization Act of 1970." [1]

The committee refused to implement the teachers' salary scale retroactive to September 1, 1971. Instead, it began paying according to the new salary schedule on November 14, 1971, which was the termination date of the presidential wage freeze.

The association requested a ruling from the Cost of Living Council [2] (the council), regarding whether or not retroactive application would violate the Wage-Price Stabilization Act and Executive Order referred to in the Memorandum of Understanding. On December 21, 1973, the council issued its decision, stating in part:

"The collective bargaining agreement in question, when viewed in light of the conflicting assertions by the parties does not specifically and unambiguously provide for increases in wages and salaries which were scheduled to take effect during the freeze. Accordingly, the parties must before implementation of any adjustments pursuant to this Decision and Order, determine the effective date of the pay adjustments provided in the parties' collective bargaining agreement for the 1971–72 school year.

"Pursuant to Section 201.40 of Economic Stabilization Regulations it is hereby determined that the equitable position of the employees involved and the need to prevent gross inequities are such that the proposed retroactive pay adjustments, if determined by the parties to be effective during the freeze period, are not unreasonably inconsistent with the goals of the

1. This is a reference to Presidential Order No. 11615, "Providing For Stabilization of Prices, Rents, Wages, and Salaries" (order), 36 FR15727 (1971) reprinted in [1971] U.S.Code Cong. & Ad News p. 2575, promulgated on August 17, 1971, by then-President Richard M.

Nixon. The order took effect upon promulgation and terminated on November 14, 1971.

2. The Cost of Living Council was the agency responsible for enforcing the provisions of the Executive Order.

Economic Stabilization Program and may be put into effect."

In light of the council's decision, counsel for the Rhode Island Education Association wrote to the committee requesting that the pay adjustments be made retroactive to September 1, 1971. In addition, the association sent a letter to the committee requesting that the subject of retroactive pay for teachers be included on the committee's agenda for its next meeting.

The matter was heard, and the committee members voted to deny the request for a retroactive pay adjustment for the 1971–1972 school year, reasoning that retroactive pay was not an issue in the Memorandum of Understanding of October 28, 1971.

On June 14, 1974, the association filed its complaint, alleging that the committee owed to it the balance of the increased wage scale for the period September 1, 1971, to October 28, 1971. The committee responded with a motion to dismiss based on the association's failure to comply with the notice provision of G.L. 1956 (1980 Reenactment) § 45–15–5.[3]

The association then filed a motion for summary judgment that was objected to by the committee. On November 29, 1974, both the committee's motion to dismiss and the association's motion for summary judgment were denied. Thereafter, the committee filed its answer and the case was assigned to be tried. Two days before the assigned trial date, the committee made a motion to amend its answer. The motion was granted on June 15, 1976, and the committee was allowed to add the following to its answer:

"Plaintiffs are precluded from maintaining the instant action since they have not complied with the provisions of their contractual agreement with the Defendant for the school year 1971–1972, specifically the article, *The Grievance Procedure,* as set forth therein; further, the provisions of the aforesaid contract have been breached."

The first trial justice to consider this matter rendered a written decision on December 3, 1976. He found the language of the parties' Memorandum of Understanding to unambiguously require the committee to pay the association's members their raises from the beginning of the 1971–1972 school year. He also stated that the parties did not have to resort to the grievance procedure because the controversy before him concerned the memorandum that, unlike the collective-bargaining agreement, contained no provision concerning arbitration.

In light of our decision in *Cranston Teachers Association v. Cranston School Committee,* 120 R.I. 105, 386 A.2d 176 (1978),[4] the trial justice issued an amended written decision that ordered a second trial for the purpose of considering parol evidence on the issue of whether the parties intended the increased salaries to be retroactive to September 1, 1971. After considering all the evidence, the trial justice decided that the parties, in their October 28, 1971 Memorandum of Understanding, intended the salary increase to be applied retroactively to September 1, 1971. Judgment was entered on September 12, 1980.

---

**3.** General Laws 1956 (1980 Reenactment) § 45–15–5 provides:

"Presentment to council of claim or demand against town.—Every person who shall have any money due him from any town or city, or any claim or demand against any town or city, for any matter, cause or thing whatsoever, shall take the following method to obtain the same, to wit: Such person shall present to the town council of the town, or to the city council of the city, a particular account of his claim, debt, damages or demand, and how incurred or contracted; which being done, in case just and due satisfaction is not made him by the town or city treasurer of such town or city within forty (40) days after the presentment of such claim, debt, damages or demand aforesaid, such person may commence his action against such treasurer for the recovery of the same."

**4.** In *Cranston Teachers Association v. Cranston School Committee,* 120 R.I. 105, 386 A.2d 176 (1978), we held, among other things, that a collective-bargaining agreement that made the teachers' salary schedule subject to the wage freeze was facially ambiguous and hence to exclude parol evidence was error.

The committee now appeals from this judgment. The association cross-appeals from that portion of the judgment which failed to award interest.

The committee first contends that the association should have utilized the grievance procedure set forth in the collective-bargaining agreement. In response thereto, the association claims, among other things, that the committee waived its rights to assert the grievance procedure as a defense.

The association directs our attention to a variety of factors that indicate that the committee waived its right to assert the grievance procedure as a defense. The committee responds by alleging that it "raised the question of resort to the grievance procedure as an affirmative defense at the earliest moment." After examining the record, we conclude that the committee was not so punctual as it suggests.

The association cites a number of cases in which waiver of the right to arbitration has been found. Generally these cases are concerned with the following scenario: A party participates in the judicial proceedings and then moves for a stay of those proceedings in order to compel arbitration. The court then determines whether or not the party's participation in the judicial proceedings is such that they should be estopped from compelling arbitration because their actions indicate an acceptance of the judicial forum. Our research indicates that courts vary considerably in regard to what factors are needed to reach that threshold level. See Annot. 98 A.L.R.3d 767–810 (1980). However, most courts agree that "general formulations of what constitutes a waiver in a particular case are of limited usefulness, as the decision normally turns not on

some mechanical act but on all of the facts of the case." *Weight Watchers of Quebec Ltd. v. Weight Watchers International, Inc.,* 398 F.Supp. 1057, 1059 (E.D.N.Y.1975).

■ In the present case the association filed its complaint on June 14, 1974. For the next two years, the committee participated in various judicial proceedings without expressing any desire to arbitrate. The committee filed a motion to dismiss based on grounds other than the parties' duty to arbitrate; it objected to the association's motion for summary judgment and filed affidavits in support of the objection; it filed an answer to the complaint; and it propounded interrogatories to the association. Two days before the trial was scheduled to begin, and almost two years after the original complaint was filed, the committee amended its answer to include a defense based on the parties' agreement to arbitrate. Finally, and most damaging to its case on appeal, the committee never moved to stay the judicial proceedings pursuant to G.L. 1956 (1979 Reenactment) § 28–9–4.[5]

A basic incentive for the use of arbitration is to provide the parties with a mode of dispute resolution that is expeditious, inexpensive, and informal. By not seeking a stay of the judicial proceedings, the committee put itself and the association through the time and expense of two trials. Were we to send this case back for arbitration, more time and more money would be expended, and perhaps more judicial proceedings would be required to review the arbitrator's decision. Simply put, the association would suffer prejudice.[6] Clearly, the usual reasons for favoring arbitration

**5.** General Laws 1956 (1979 Reenactment) § 28–9–4 provides:

"Stay of judicial proceedings on arbitrable issue.—If any suit or proceedings be brought upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending upon being satisfied that the issue involved in such suit or proceedings is referable to arbitration under such an agreement, shall on application

of one of the parties, stay the trial of the action until such arbitration has been held."

**6.** Federal cases dealing with this issue have increasingly relied on the existence of prejudice to determine whether or not waiver has occurred. *See J & S Construction Co. v. Travelers Indemnity Co.,* 520 F.2d 809, 809–10 (1st Cir.1975).

as a vehicle for dispute resolution do not exist in the present case.

In light of the above factors, we believe that the committee manifested a willingness, if not a desire, to have the courts resolve the controversy. Accordingly, we find that the committee waived its right to invoke the grievance clause of the collective-bargaining agreement.[7]

Our next task is to determine whether or not the trial justice correctly found that the parties' Memorandum of Understanding required the increased salary payments to be made retroactive to September 1, 1971.

We shall overturn a trial justice's finding of fact[8] only when such findings are clearly wrong or when the trial justice has overlooked or misconceived material evidence. *Rhode Island Turnpike & Bridge Authority v. Cohen*, R.I., 433 A.2d 179 (1981). In the present case we are not persuaded that the trial justice was clearly wrong, nor do we believe that he misconceived or overlooked material evidence. The interpretation of a written agreement involves a mixed question of law and fact. Generally, this court will not overturn the determination of a trier of fact on such a mixed question unless reasonable persons could come to but one conclusion. *DeNardo v. Fairmount Foundries Cranston, Inc.*, 121 R.I. 440, 399 A.2d 1229 (1979). As a result, we leave intact his finding that the Memorandum of Understanding required the salary increases to be applied retroactively to September 1, 1971.

Our final task today is to determine whether or not the trial justice erred by refusing to award interest on the retroactive salary increases. General Laws 1956 (1969 Reenactment) § 9–21–10, as amended by P.L.1981, ch. 54, § 1, provides:

"Interest in civil action.—In any civil action in which a verdict is rendered or a decision made for pecuniary damages, there shall be added by the clerk of the court to the amount of damages, interest at the rate of twelve per cent (12%) per annum thereon from the date the cause of action accrued which shall be included in the judgment entered therein. This section shall not apply until entry of judgment or to any contractual obligation where interest is already provided or as to any condemnation action."

The association's contention that the above section applies to the present case is unrefuted by the committee. It is also supported by our decision in *Aiello Construction, Inc. v. Nationwide Tractor Trailer Training & Placement Corp.*, R.I., 413 A.2d 85 (1980). In *Aiello Construction* we found, among other things, that § 9–21–10 applied to judgments in actions for damages for breach of contract. Because the present case is for breach of contract, we find that the trial justice should have awarded interest in accordance with § 9–21–10.

For the reasons stated above, the committee's appeal is denied and dismissed, the association's cross-appeal is sustained, the judgment appealed from is affirmed, and the case is remanded to the Superior Court with the direction that interest be awarded in accordance with § 9–21–10.

---

7. Because we find that defendant waived its right to arbitration, we do not consider whether or not the trial justice made adequate findings of fact to support his conclusion that the subject matter was not one that must go the grievance-procedure route.

8. This court has held that the construction of an ambiguous contractual provision is a question of fact. *Judd Realty, Inc. v. Tedesco*, R.I., 400 A.2d 952 (1979).