June 19, 2019

**Supreme Court**

No. 2017-313-Appeal.
(WC 16-303)

JHRW, LLC          :

v.          :

Seaport Studios, Inc. et al.          :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

JHRW, LLC                :

v.                  :

Seaport Studios, Inc. et al.      :

Present: Suttell, C.J., Flaherty, Robinson, and Indeglia, JJ.

# O P I N I O N

**Chief Justice Suttell, for the Court.**  A long-simmering dispute over parking spaces in the Watch Hill section of Westerly is the genesis of this appeal.  The defendants, Seaport Studios, Inc. (Seaport) and an officer of Seaport, Randall Saunders (Saunders) (collectively, defendants), appeal from a Superior Court order granting summary judgment in favor of the plaintiff, JHRW, LLC (JHRW or plaintiff), as to count I of its amended complaint.  On appeal, the defendants argue that the hearing justice erred in not referring the dispute to arbitration and in finding that the defendants were precluded from asserting Seaport's right to park on JHRW's property.  For the reasons set forth in this opinion, we affirm the order of the Superior Court.

## I

## Facts and Travel

### A

### Background

In 1985, Russell Waldo (Waldo) and James Hennessey (Hennessey), the principals of JHRW, conveyed title to two small buildings in Westerly to Seaport.  Contemporaneously, Waldo and Hennessey entered into an agreement with Seaport to lease the land under those buildings for ninety-nine years (the lease agreement).  The lease agreement contained three provisions

particularly relevant to this appeal. First, the lease agreement required the lessors (Waldo and Hennessey) to provide one parking space to Seaport at a location and at an annual rental price to be determined by the lessors. Second, the lease agreement provided that: "In the event said premises are submitted to the Rhode Island Condominium Act at any time in the future, Lessor[s] shall furnish a condominium unit deed for the demised premises to [Seaport]." Third, the lease agreement stated that: "[t]he demised premises are subject to building, building line, and zoning restrictions as are or may be imposed by governmental authorities * * *." Waldo and Hennessey also owned the land surrounding Seaport's leased property.

In the mid-2000s, Waldo and Hennessey sought to develop the part of their land defined as "Parcel B," which included the land leased to Seaport. Initially, Waldo and Hennessey tried to include Seaport in their plans to remodel the buildings on their property and Seaport's buildings on the leased land. Seaport, however, declined to participate.

In 2008, a development company holding title to the property declared Parcel B a master condominium named "The Napatree Point Master Condominium."[1] The Napatree Point Master Condominium was divided into three units: Unit A, which, at that time, included an existing building adjacent to the leased land; Unit B, which included the leased land and Seaport's two buildings; and Unit C, an open lot with no existing structures, located behind Units A and B. Significantly, one section of the "Amended and Restated Declaration of Condominium of The Napatree Point Master Condominium" (the Declaration) provided that:

---

[1] In 1990, Hennessey conveyed his interest in the property—which included the leased land—to JHRW Partnership, which was formed by Waldo and Hennessey as principals. By 2008, JHRW Partnership and Waldo conveyed their interest in the property to a development company, 118 Bay Street Corporation, for the purpose of developing and selling the property as condominiums. JHRW Partnership took ownership of the land that became Units A, B, and C of the Napatree Point Master Condominium in 2012, and JHRW Partnership conveyed that interest to JHRW in the same year.

> "Any dispute under this Declaration shall be submitted to binding arbitration under the rules of the American Arbitration Association and the decision of the arbitrator shall be final and conclusive as to all matters, including imposition of cost and expenses against either party. The venue of such action shall be in Westerly, Rhode Island, or at a point closest to Westerly, Rhode Island and the decision shall not be subject to judicial review."

Unit C was subsequently developed into a parking lot. An early site plan indicated an allocation of nine parking spaces in Unit C to the two existing buildings owned by Seaport on the leased land. However, this specific allocation of nine parking spaces for Seaport's buildings was not included in the plan eventually approved by the town. In 2014, Unit C was declared a parking condominium, with each parking space defined as a sub-condominium unit. According to Waldo, since 2014, at least twenty-three of the parking spaces in Unit C have sold for "up to $33,000 per unit." As of the date of the amended complaint in the instant action, JHRW remained the title owner of thirteen parking units in Unit C. Seaport has not been conveyed any parking units in Unit C.

## B

### The First Superior Court Case

In 2009, Seaport filed a complaint in Superior Court (No. WC-2009-871) against JHRW, the development company, and Waldo and Hennessey, individually,[2] alleging, *inter alia*, that JHRW breached the lease agreement by: (1) failing to comply with Westerly zoning ordinances in refusing to transfer nine parking spaces on its property to Seaport; (2) "denying [Seaport] peaceful enjoyment of the leased premise[s]"; and (3) refusing to furnish a condominium deed after declaring Parcel B a condominium.[3] JHRW filed an answer and counterclaim to Seaport's complaint and also filed a third-party complaint against Randall Saunders, Jean Saunders, and one

---

[2] For the sake of clarity and consistency, we will refer to the defendants in the first case collectively as "JHRW."

[3] Seaport later amended its complaint to include a claim for fraudulent transfer of title.

other third-party defendant.[4] JHRW alleged, in part, that Jean and Randall Saunders "refuse[d] to park their vehicles within the space designated by Waldo and Hennessey[,]" as set forth in the lease agreement, and also refused to pay the annual parking fee for several years.[5]

In 2014, a justice of the Superior Court heard arguments on a motion for summary judgment filed by JHRW as to all of Seaport's claims, and, in a written decision filed on May 28, 2014, the hearing justice granted JHRW's motion, in part. Specifically, the hearing justice determined that JHRW was entitled to summary judgment as to Seaport's claims relating to transfer of the condominium deed and compliance with Westerly zoning ordinances.[6] The hearing justice denied summary judgment for JHRW as to Seaport's claim that an implied easement granted it entitlement to nine parking spaces in Unit C.[7] An order reflecting the hearing justice's decision entered on June 3, 2014.

Following the hearing justice's decision on JHRW's motion for summary judgment, the following claims remained active in the case: (1) Seaport's claim to nine parking spaces by an implied easement; (2) JHRW's counterclaim for damages due to Seaport's failure to pay parking fees; and (3) JHRW's counterclaim for injunctive relief barring Seaport and the Saunders from parking on JHRW property. Seaport amended and supplemented its complaint a second time in July 2014 to add the Town of Westerly (Westerly) as a defendant, alleging that Westerly had failed to comply with town zoning ordinances by approving a site plan for Unit C "without an official zoning review[.]" Seaport's amended and supplemental complaint also reiterated its allegations

---

[4] The claim against the other third-party defendant was settled and is not relevant to the case at bar.

[5] Jean and Randall Saunders are both officers of Seaport.

[6] The hearing justice determined that the claim relating to the transfer of the condominium deed was moot because JHRW provided Seaport with a condominium deed in 2013, during the pendency of this action.

[7] The hearing justice's decision also addressed other claims that are not relevant to this appeal.

that, in breach of the lease, JHRW had refused to furnish a condominium deed and had not complied with Westerly zoning ordinances in failing to identify Seaport's nine commercial parking spaces. The claim against Westerly was dismissed shortly thereafter.

In its pretrial memorandum filed on May 3, 2016, Seaport indicated that it "w[ould] not be pursuing" claims raised in its second amended complaint filed in 2014, and it further represented that "all claims raised by Seaport will be dismissed with prejudice." Two weeks later, on the day trial was set to begin, the parties filed a stipulation, agreeing to dismiss all outstanding claims. Specifically, the stipulation read, in pertinent part, that "[t]here are no remaining claims by plaintiffs, defendants and counterclaim defendants Randall & Jean Saunders and this case is closed." Final judgment pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure entered on May 27, 2016.[8]

## C

### The Current Dispute

Just weeks after entry of final judgment in the first action, Waldo and Hennessey noticed that an officer and an employee of Seaport each had parked in the Unit C parking lot. The plaintiff filed the instant action against Seaport on June 15, 2016, alleging trespass, slander of title, unjust enrichment, and contempt. In count I of its complaint, plaintiff sought injunctive relief for Seaport's alleged trespass that would bar Seaport and its "officers, agents, customers, and employees, from parking anywhere on land within the Unit C condominium." The plaintiff later amended its complaint to add a claim against Randall Saunders, individually, for slander of title.

---

[8] After final judgment entered, Seaport and the Saunderses filed a motion to vacate the judgment pursuant to Rule 60(b) of the Superior Court Rules of Civil Procedure, which was denied by a justice of the Superior Court. Seaport and the Saunderses have filed a notice of appeal from that decision, but that appeal has not yet been docketed by this Court.

In response, defendants filed an answer and a counterclaim, alleging that, "[p]ursuant to a Westerly zoning ordinance and/or parking agreement, [Seaport] was and is entitled to nine (9) commercial parking spaces[,]" and further that, by failing to transfer the parking spaces to Seaport, "[p]laintiff has block[ed] [Seaport] from their lawful use of the nine (9) parking spaces." The defendants sought a declaration as to Seaport's rights with respect to the nine parking spaces and plaintiff's failure to comply with Westerly zoning ordinances by barring Seaport's access to the spaces.

On December 15, 2016, JHRW filed a motion for partial summary judgment as to count I of its amended complaint and as to defendants' counterclaim. The plaintiff argued that it was entitled to permanent injunctive relief as a matter of law because: (1) Seaport was precluded from asserting any rights—by way of claims or defenses—to the parking spaces, based on *res judicata* and collateral estoppel, as those claims were litigated in the first action; (2) plaintiff would be irreparably harmed without injunctive relief; (3) the Superior Court did not need to balance the equities in a continuing trespass case and, further, "nothing exist[ed] on Seaport's side of the scales to measure against the irreparable harm to JHRW"; and (4) the public interest was not implicated in this action. Relatedly, plaintiff also argued that *res judicata* and collateral estoppel barred defendants from asserting their counterclaim in the current action.

The defendants filed their own motion for summary judgment the following day, arguing that, by bringing the instant dispute, plaintiff expanded its development rights to Unit C under the Declaration, an action that was subject to unanimity requirements established by G.L. 1956 § 34-36.1-2.17(d), with which plaintiff had not complied. The defendants further argued that they were entitled to arbitration of the dispute pursuant to the terms of the Declaration.

The plaintiff objected to defendants' motion for summary judgment, contending that bringing an action against defendants for the common law claims of trespass or misuse of an easement did not constitute an exercise of development rights or special declarant rights under the Declaration. The plaintiff also argued that the instant dispute was not arbitrable because it did not arise under the Declaration, and that Seaport had already waived its right to arbitration and elected its judicial remedy by litigating its claim to parking rights in No. WC-2009-871.

Following a hearing on the cross-motions for summary judgment, the hearing justice issued a decision from the bench granting plaintiff's motion for partial summary judgment and denying defendants' motion for summary judgment. The hearing justice concluded that "res judicata applies to bar the defendant's counterclaim in this matter that seeks a declaration that the plaintiff failed to comply with the zoning ordinance, and that by reason of that, they have some implied easement over the Unit C parking spaces." The hearing justice further determined that collateral estoppel would also apply in this matter because "whether the lease with the defendant required the plaintiff to provide parking spaces, and whether the town could be compelled to enforce the zoning ordinance against the plaintiff" had already been litigated in the prior action. Finally, the hearing justice found that plaintiff had "demonstrated the necessary elements of entitlement for a permanent injunction * * *."

As to defendants' cross-motion for summary judgment, the hearing justice determined that the current dispute did not arise under the terms of the Declaration because "there's no attempt by the plaintiff, in this case, to enforce any of the actions described in the definitions of development rights and special declarant rights." For that reason, the hearing justice determined, defendants were not entitled to arbitration. The hearing justice further concluded that, even if the dispute did

arise under the Declaration, defendants failed to specifically plead arbitration as an affirmative defense.

An order entered on May 31, 2017, granting plaintiff's motion for summary judgment as to count I of its amended complaint and permanently enjoining Seaport and "its officers, agents, customers, and employees" from parking in the Unit C parking spaces owned by plaintiff.[9] The order also dismissed defendants' counterclaim and denied defendants' motion for summary judgment. The defendants timely appealed.

The plaintiff filed a motion to dismiss defendants' appeal with the Superior Court on June 26, 2017, arguing that the part of the order dismissing defendants' counterclaim was not appealable absent entry of final judgment pursuant to Rule 54(b).[10] The plaintiff further contended that defendants could not appeal the denial of its motion for summary judgment because that portion of the order was also interlocutory. The defendants filed an objection to plaintiff's motion to dismiss the appeal.

---

[9] Although the order is captioned "Amended Order," a review of the record demonstrates that the May 31, 2017 order is the only order memorializing the hearing justice's bench decision granting plaintiff's motion for summary judgment and denying defendants' motion for summary judgment.

[10] Rule 54(b) of the Superior Court Rules of Civil Procedure provides:

> "When more than one (1) claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one (1) or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."

A hearing of plaintiff's motion to dismiss was held, and, on July 28, 2017, an order entered dismissing defendants' appeal from the part of the May 31, 2017 order dismissing defendants' counterclaim. The order further clarified that defendants' appeal from the part of the order granting summary judgment in favor of plaintiff as to count I of plaintiff's amended complaint may proceed to this Court, pursuant to G.L. 1956 § 9-24-7.[11] The hearing justice also denied plaintiff's motion to dismiss defendants' appeal from the denial of its cross-motion for summary judgment as moot because defendants did not appeal from that part of the summary judgment order.

## II

### Standard of Review

"This Court will review the grant of a motion for summary judgment *de novo*, employing the same standards and rules used by the hearing justice." *Cancel v. City of Providence*, 187 A.3d 347, 349 (R.I. 2018) (quoting *Newstone Development, LLC v. East Pacific, LLC*, 140 A.3d 100, 103 (R.I. 2016)). "We will affirm a trial court's decision only if, after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Id.* at 350 (brackets omitted) (quoting *Newstone Development, LLC*, 140 A.3d at 103). "Furthermore, the nonmoving party bears the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions." *Id.* (quoting *Newstone Development, LLC*, 140 A.3d at 103).

---

[11] General Laws 1956 § 9-24-7 provides, in pertinent part, that:

> "Whenever, upon a hearing in the [S]uperior [C]ourt, an injunction shall be granted or continued * * * by an interlocutory order or judgment * * * an appeal may be taken from such order or judgment to the [S]upreme [C]ourt in like manner as from a final judgment, and the appeal shall take precedence in the [S]upreme [C]ourt."

Additionally, "[w]hen reviewing the grant or denial of a permanent injunction, we will reverse the lower court on appeal only when it can be shown that the trial justice misapplied the law, misconceived or overlooked material evidence or made factual findings that were clearly wrong." *Nye v. Brousseau*, 992 A.2d 1002, 1010 (R.I. 2010) (quoting *Holden v. Salvadore*, 964 A.2d 508, 512-13 (R.I. 2009)).

## III

### Discussion

On appeal, defendants contend that the trial justice erred by: (1) failing to order that this dispute be arbitrated and (2) granting plaintiff injunctive relief based on *res judicata* and collateral estoppel. We proceed to consider defendants' contentions in turn.

### A

### Arbitration

The defendants first argue that the hearing justice erred in failing to stay the action and refer it to arbitration. The defendants contend that they "did not manifest a willingness to have the plaintiffs [*sic*] claims *against them in this action* adjudicated in a judicial rather than arbitral forum." (Emphasis in original.) The defendants aver that, even if a party has chosen to waive arbitration in an earlier action, that right has not been waived in a separate, subsequent action. Conversely, plaintiff responds that defendants have waived their arbitration argument for several reasons: (1) defendants did not—and could not—appeal the hearing justice's denial of defendants' cross-motion for summary judgment, which was based, in part, on an entitlement to arbitration under the terms of the Declaration; (2) defendants did not specifically plead arbitration as an affirmative defense; and (3) defendants waived arbitration when failing to assert their rights to arbitration during the first action. The plaintiff further contends that, in any event, Seaport's

parking rights are not arbitrable because the dispute did not arise under the Declaration, and finally, that defendants elected a judicial remedy by litigating the parking issue to a conclusion in the prior action.

In denying defendants' motion for summary judgment, the hearing justice concluded that defendants' arbitration argument must fail because "[t]his isn't a dispute, in my judgment, in judgment of this Court, which arises under the Master Declaration[,]" and further, that defendants had waived their right to arbitration because they did not specifically plead it as an affirmative defense. Finally, the hearing justice concluded that "if there was ever a case of waiver, this is especially applicable here where we had litigation on what the Court sees is the same issues in the earlier case which was disposed of by a dismissal with prejudice, or by final judgment I should say."

"[A]rbitration is a desirable method of dispute resolution that has long been favored by the courts." *Newman v. Valleywood Associates, Inc.*, 874 A.2d 1286, 1289 (R.I. 2005) (quoting *Soprano v. American Hardware Mutual Insurance Co.*, 491 A.2d 1008, 1011 (R.I. 1985)). However, the right to arbitration "can be waived when a party 'manifests a willingness, if not a desire, to have the courts resolve the controversy.'" *Id.* (brackets omitted) (quoting *North Smithfield Teachers Association v. North Smithfield School Committee*, 461 A.2d 930, 934 (R.I. 1983)). "When determining the precise point at which a party has manifested that willingness to litigate, we are mindful that 'general formulations of what constitutes a waiver in a particular case are of limited usefulness, as the decision normally turns not on some mechanical act but on all of the facts of the case.'" *Id.* (quoting *North Smithfield Teachers Association*, 461 A.2d at 933).

The defendants argue that their decision to waive arbitration in the prior case has no bearing on their right to arbitrate the current claims. We need not reach that question, however, because

we find that defendants' actions in this case demonstrate waiver of this issue on appeal, regardless of their actions in the prior litigation. We begin our discussion by noting that the first and only time defendants raised this issue in Superior Court was in their cross-motion for summary judgment. The merits of defendants' motion for summary judgment are not before us on appeal.

Moreover, even if we consider defendants' arbitration contention as a defense to count I of plaintiff's amended complaint, we find that this argument has been waived because it was not pled in defendants' answer. "It has been our consistent holding that arbitration is an affirmative defense and that 'a defending party seeking arbitration must specifically plead the right to arbitrate in its answer or the defense will be deemed waived.'" *CACH, LLC v. Potter*, 154 A.3d 939, 942 (R.I. 2017) (quoting *Soprano*, 491 A.2d at 1010). The defendants set forth four affirmative defenses in their answer to plaintiff's amended complaint: (1) failure to state a claim upon which relief can be granted; (2) accord and satisfaction; (3) estoppel; and (4) insufficiency of process. The defendants never sought leave to amend their answer to include arbitration as a defense, nor did they specifically move for a stay of the proceedings pending arbitration pursuant to G.L. 1956 § 10-3-3.[12] Accordingly, we are of the opinion that defendants have waived their right to arbitration of count I of plaintiff's amended complaint.

---

[12] General Laws 1956 § 10-3-3 reads:

> "If any suit or proceeding be brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the suit is pending, upon being satisfied that the issue involved in the suit or proceeding is referable to arbitration under such an agreement, shall, *on application of one of the parties*, stay the trial of the action until the arbitration has been had in accordance with the terms of the agreement * * *." (Emphasis added.)

## B

## Preclusion

Before we consider issues of preclusion, we note that defendants' challenge to the hearing justice's decision relates only to the merits of count I of plaintiff's amended complaint and does not address the hearing justice's findings as to the other factors required to obtain injunctive relief. Thus, we need not consider the hearing justice's conclusions as to irreparable harm, weighing of equities, or public interest.

The defendants argue that the hearing justice erred in granting summary judgment on count I of plaintiff's amended complaint because, defendants contend, claims that arose from Seaport's status as a condominium owner were not claims that "could have been brought" for purposes of *res judicata*, as Seaport acquired rights as a deeded owner after the filing of the complaint in the first action. The plaintiff counters that defendants were required to supplement the pleadings in the first action after Seaport acquired rights as a condominium owner. Moreover, plaintiff avers that Seaport's parking right as a unit owner of the condominium "unquestionably fell within the same 'transaction or series of transactions' alleged in its original complaint" and that, thus, defendants are barred from relitigating those claims or defenses.

"*Res judicata*, or claim preclusion, 'bars the relitigation of all issues that were tried or might have been tried in an earlier action.'"[13] *Reynolds v. First NLS Financial Services, LLC*, 81 A.3d 1111, 1115 (R.I. 2014) (quoting *Huntley v. State*, 63 A.3d 526, 531 (R.I. 2013)). It is our well-settled principle that "[r]es judicata 'serves as a bar to a second cause of action where there exists: (1) identity of parties; (2) identity of issues; and (3) finality of judgment in an earlier

---

[13] *Res judicata* has also been interpreted to bar relitigation of any defense raised in a prior case. *See, e.g.*, *Town of Richmond v. Wawaloam Reservation, Inc.*, 850 A.2d 924, 932 (R.I. 2004).

action.'" *Goodrow v. Bank of America, N.A.*, 184 A.3d 1121, 1126 (R.I. 2018) (quoting *Torrado Architects v. Rhode Island Department of Human Services*, 102 A.3d 655, 658 (R.I. 2014)). Moreover, "[a] final judgment on the merits precludes the parties or their privies from relitigating issues that were or *could have been raised in that action*." *Id.* at 1127 (emphasis in original) (deletion omitted) (quoting *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)). The defendants do not challenge the hearing justice's conclusions with respect to the identity of parties or finality of judgment.[14] Thus, we focus our analysis solely on whether there exists identity of issues between the first action and the current dispute.

We have previously held that "[a]n identity of issues requires first, that the issue sought to be precluded must be identical to the issue decided in the prior proceeding; second, the issue must actually have been litigated; and third, the issue must necessarily have been decided." *Goodrow*, 184 A.3d at 1127 (quoting *State v. Pacheco*, 161 A.3d 1166, 1173 (R.I. 2017)). Furthermore, "[t]his Court has adopted the transactional rule governing the preclusive effect of the doctrine of *res judicata*." *Id.* (deletion omitted) (quoting *Bossian v. Anderson*, 991 A.2d 1025, 1027 (R.I. 2010)). "The transactional rule provides that all claims arising from the same transaction or series of transactions which could have properly been raised in a previous litigation are barred from a later action." *Id.* (quoting *Bossian*, 991 A.2d at 1027). "What constitutes a transaction or a series of connected transactions is to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations."

---

[14] We note that, as mentioned *supra*, defendants have filed a motion to vacate the final judgment in the first action, pursuant to Rule 60(b), which motion was denied by a justice of the Superior Court. The defendants have filed a notice of appeal which has not yet been docketed by this Court. However, "[a] motion under [Rule 60(b)] does not affect the finality of a judgment or suspend its operation." Super. R. Civ. P. 60(b)(6).

*Id.* (deletion omitted) (quoting *Town of Warren v. Bristol Warren Regional School District*, 159 A.3d 1029, 1036 (R.I. 2017)).

The defendants contend that, even if the transactional rule applies in this case, this Court should adopt an exception to the rule whereby *res judicata* would not apply to claims stemming from new rights acquired in the same transaction, but after the complaint was filed in the first action. The defendants support this position by citing a decision from the Eleventh Circuit Court of Appeals, which held that "[t]he rule that a judgment is conclusive as to every matter that might have been litigated does not apply to new rights acquired pending the action which might have been, but which were not, required to be litigated." *Manning v. City of Auburn*, 953 F.2d 1355, 1360 (11th Cir. 1992) (quoting *Los Angeles Branch NAACP v. Los Angeles Unified School District*, 750 F.2d 731, 739 (9th Cir. 1984)).

First, it is clear to this Court that an identity of issues exists under our transactional rule, and, further, we decline defendants' invitation to adopt an exception to *res judicata* on the facts of this case. The defendants seek to relitigate the same issue as in the prior action: Seaport's entitlement to parking spaces on JHRW's property. The fact that defendants now assert those rights as a condominium owner and not as a leaseholder, as in the first action, does not exempt them from the doctrine of *res judicata*. Seaport acknowledged in the first action that JHRW had conveyed to Seaport a condominium deed to its leased land in July 2013. Seaport had ample opportunity to allege its claims as a condominium owner following acceptance of that deed. Trial was not set to begin until May 2016, and, ultimately, final judgment was entered in that same month. Moreover, Seaport did, in fact, amend *and supplement* its complaint in 2014, nearly one year after its acceptance of the condominium deed. However, Seaport's 2014 "Amended and Supplemental Complaint" lacked any facts detailing its acceptance of the condominium deed or

status as a unit owner. Rather, in that 2014 complaint, Seaport reiterated its allegations regarding JHRW's refusal to furnish Seaport a condominium deed and its request for a declaration that it was entitled to parking spots based on its status as a leaseholder—a status Seaport no longer held in 2014. Consequently, we conclude that Seaport's alleged right to parking which it may have gained as a condominium deed holder is a claim or defense that "could have been raised" in the first action, and, thus, Seaport is precluded from relitigating that issue in the current action.[15] *See Goodrow*, 184 A.3d at 1127 (emphasis omitted) (quoting *Federated Department Stores, Inc.*, 452 U.S. at 398).

Accordingly, we are of the opinion that the hearing justice did not err in granting summary judgment in favor of the plaintiff as to count I of its amended complaint.

## IV

## Conclusion

For the reasons set forth in this opinion, we affirm the order of the Superior Court granting summary judgment in favor of the plaintiff as to count I of the plaintiff's amended complaint and permanently enjoining the defendants from parking in the Unit C parking spaces owned by the plaintiff. The record shall be returned to that tribunal.

Justice Goldberg did not participate.

---

[15] The defendants also contend that the hearing justice erred in determining that collateral estoppel applied to preclude relitigation of certain issues. However, given our conclusion about the application of *res judicata*, we need not address defendants' argument with respect to collateral estoppel.

- 16 -

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | JHRW, LLC v. Seaport Studios, Inc. et al. |
| **Case Number** | No. 2017-313-Appeal. <br> (WC 16-303) |
| **Date Opinion Filed** | June 18, 2019 |
| **Justices** | Suttell, C.J., Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Washington County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Bennett R. Gallo |
| **Attorney(s) on Appeal** | For Plaintiff: <br><br> Kelly M. Fracassa, Esq. <br> For Defendants: <br><br> Matthew L. Fabisch, Esq. |