December 11, 2020

**Supreme Court**

No. 2019-126-Appeal.
No. 2019-139-Appeal.
(PC 16-1618)

Bank of America, N.A.              :

v.                                 :

Timothy G. Fay et al.              :

NOTICE:  This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Supreme Court

No. 2019-126-Appeal.
No. 2019-139-Appeal.
(PC 16-1618)

Bank of America, N.A.             :

v.                               :

Timothy G. Fay et al.            :

Present: Suttell, C.J., Goldberg, Flaherty, and Robinson, JJ.

**O P I N I O N**

**Chief Justice Suttell, for the Court.** The defendants, Timothy Fay (Fay) and David Patrick (Patrick) (collectively the guarantors or defendants), appeal from the entry of final judgment in favor of the plaintiff, Bank of America (the bank or plaintiff), in this consolidated appeal. The defendants raise three arguments on appeal. First, the defendants contend that the hearing justice erred in granting summary judgment in favor of the bank as to the defendants' liability. Second, the defendants argue that the hearing justice erred in granting summary judgment in favor of the bank by finding that the defendants were bound by the Connecticut Superior Court's deficiency calculation. Third, the defendants assert that the hearing justice erred in failing to conduct a hearing on Fay's motion to amend his answer. For the reasons set forth herein, we affirm the judgment of the Superior Court.

# I

# Facts and Travel

Fay and Patrick were the sole principals of Stonestreet Hospitality Realty Company, LLC (Stonestreet), a Connecticut Limited Liability Company; the pair owned 70 percent and 30 percent of the membership interests, respectively. On May 15, 2008, Stonestreet executed a promissory note (the note) to the bank in the amount of $21,808,000 with the intent to construct a hotel in Montville, Connecticut (the property), near Mohegan Sun casino. The note was secured by a first-position mortgage on the property and was associated with a senior construction and interim loan agreement (the loan agreement). On the same day, the guarantors, in their individual capacities, executed a guaranty of the loan agreement (the guaranty). The guaranty included a choice-of-law clause indicating that it would be governed by Rhode Island law, without giving effect to principles of conflict of laws. Further, the guaranty was executed in Rhode Island; Fay and Patrick are Rhode Island residents, and the bank is "a national banking association organized under federal law with a place of business in Providence, Rhode Island."

The loan agreement set forth a maturity date of November 21, 2014 for the note, which Stonestreet failed to pay. In September 2015, the parties entered into a loan forbearance agreement (the forbearance agreement) under which Stonestreet and the guarantors acknowledged: (1) Stonestreet's failure to honor its promise

under the loan agreement to pay in a timely fashion; (2) that the loan agreement was still in effect; and (3) that a new maturity date would be set for December 15, 2015. The forbearance agreement also included a choice-of-law clause indicating that it would be governed by Connecticut law. Again, Stonestreet failed to pay the note.

Following the failure to pay, the bank filed complaints in Connecticut Superior Court and in Rhode Island Superior Court. For clarity, we will recite the facts of each state's proceeding separately.

## A

## Connecticut Proceedings

In May 2016, the bank filed a foreclosure complaint in Connecticut Superior Court seeking to foreclose its mortgage on the property. The guarantors were not named parties in the Connecticut proceedings.

In September 2017, the Connecticut hearing justice adjudicated the amount due and entered a judgment of strict foreclosure on the matter for $23,108,768.17, thereby quantifying the amount due under the note, and he set Stonestreet's "law days" to commence on October 31, 2017.[1] The parties stipulated that the facts

---

[1] Black's Law Dictionary defines strict foreclosure as "[a] rare procedure that gives the mortgagee title to the mortgaged property—without first conducting a sale— after a defaulting mortgagor fails to pay the mortgage debt within a court-specified period." Black's Law Dictionary 789 (11th ed. 2019). Further, "[t]he use of strict foreclosure is limited to special situations except in those few states that permit this remedy generally." *Id.* The running of law days in a strict foreclosure procedure "serves as the operative act which extinguishes the mortgagor's right of

- 3 -

warranted the entry of a judgment of strict foreclosure without a finding regarding the value of the property, which would be determined upon a motion for a deficiency judgment. The bank thereafter recorded a certificate of foreclosure on November 8, 2017.

The bank then filed an amended motion for a deficiency judgment. In April 2018, the Connecticut hearing justice found that the value of the property on the ownership transfer date was $18.4 million. Subsequently, in July 2018, the Connecticut hearing justice issued an order granting the bank's motion for a deficiency judgment against Stonestreet "as of April 30, 2018 in favor of the [bank] in the amount of $5,022,003.67 with post judgment interest accruing after April 30, 2018 at * * * prime rate plus four (4%) percent interest." No appeal was taken from that final judgment.

**B**

**Rhode Island Proceedings**

In April 2016, the bank filed a complaint in Rhode Island Superior Court arguing, *inter alia*, that the guarantors are jointly and severally liable to the bank for the indebtedness due under their guaranty. The bank then filed a motion for partial

---

redemption[.]" *Wells Fargo Bank of Minnesota, N.A. v. Morgan*, 909 A.2d 526, 531 (Conn. App. Ct. 2006). More than one hundred years ago, this Court declared that "[s]trict foreclosures have not been considered with favor, and within the last century they have almost entirely given way to foreclosures by sale." *Hazard v. Robinson*, 15 R.I. 226, 229, 2 A. 433, 436-37 (1886).

summary judgment in December 2017.  Days before the hearing on that motion, Fay's attorney filed a petition for admission *pro hac vice*, which stated, "[Fay's out-of-state attorney] currently represents the interests of the [d]efendant in a companion case, with substantially similar issues in the State of Connecticut."[2] Subsequently, in June 2018, the hearing justice found that the guarantors were liable for the moneys due under the guaranty.  The hearing justice, however, found that the precise amount of the deficiency was not before him at that time—all that was before him was the question of whether a deficiency existed.[3]

In August 2018, following the conclusion of the Connecticut proceedings, the bank moved for summary judgment in Rhode Island Superior Court, setting forth several legal theories in furtherance of its contention that the guarantors are "liable for the amount adjudicated by the Connecticut Proceeding."  The hearing justice thereafter heard arguments from the bank and the guarantors regarding "the amount due under this guaranty."  In his decision on the motion, the hearing justice addressed all six legal theories put forth by the bank, including: (1) the doctrine of merger; (2) *res judicata*; (3) collateral estoppel; (4) the Restatement (Second) *Judgments*; (5) judicial estoppel; and (6) the doctrine of judicial admission.

---

[2] The record transmitted by the Superior Court does not contain an order granting or denying this motion.  Nonetheless, the record indicates that Fay's out-of-state attorney did appear on his behalf.
[3] Following the hearing on the motion for partial summary judgment, Fay also filed an amended answer; however, a motion to amend the answer was never filed.

Through his discussion of these legal theories, the hearing justice ultimately found that the guarantors were in privity with Stonestreet and were thereby bound by the Connecticut deficiency judgment. The hearing justice then determined that, while Rhode Island law governed the guaranty, Connecticut law governed the issue of *res judicata*. In applying Connecticut law, the hearing justice found that *res judicata* barred the redetermination of the debt owed to the bank. With regard to collateral estoppel and the Restatement (Second) *Judgments*, the hearing justice determined that the principles applied to the judgment of the Connecticut Superior Court and, accordingly, both Fay and Patrick were "bound by the Connecticut Court's valuation of the [p]roperty."

Additionally, the hearing justice declined to hold a new trial on the amount of the deficiency because the doctrine of judicial estoppel would preclude such a trial, as the guarantors had previously argued before him that the Superior Court could not decide the amount, if any, that the guarantors would owe until the Connecticut Superior Court adjudicated the deficiency due. For these reasons, the hearing justice granted summary judgment in favor of the bank and found the guarantors jointly and severally liable to the bank for $5,022,003.67, plus interest, in accordance with the Connecticut Superior Court's previous judgment.

Final judgment was entered in favor of the bank on November 2, 2018. Fay filed a timely appeal on November 21, 2018, and Patrick did the same on November 26, 2018. The guarantors' appeals were thereafter consolidated on May 29, 2019.

## II

## Standard of Review

"This Court will review the grant of a motion for summary judgment *de novo*, employing the same standards and rules used by the hearing justice." *Nelson v. Allstate Insurance Company*, 228 A.3d 983, 984-85 (R.I. 2020) (quoting *JHRW, LLC v. Seaport Studios, Inc.*, 212 A.3d 168, 175 (R.I. 2019)). "We will affirm a trial court's decision only if, after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Id.* at 985 (quoting *Seaport Studios, Inc.*, 212 A.3d at 175). "Furthermore, the nonmoving party bears the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions." *Id.* (quoting *Seaport Studios, Inc.*, 212 A.3d at 175).

"We accord great deference to the decision by a hearing justice to grant or deny a motion to amend and will not disturb his [or her] decision unless he [or she] abused his [or her] discretion." *CACH, LLC v. Potter*, 154 A.3d 939, 942 (R.I. 2017).

- 7 -

"Rule 15(a) of the Superior Court Rules of Civil Procedure states that 'leave [to amend] shall be freely given when justice so requires.'" *Id.* We have applied this rule liberally to permit amendment "absent a showing of extreme prejudice." *Id.* (quoting *Wachsberger v. Pepper*, 583 A.2d 77, 78 (R.I. 1990)).

## III

## Discussion

On appeal, the guarantors contend that the hearing justice erred when he granted the bank's motion for partial summary judgment as to the guarantors' liability on the guaranty. The guarantors further argue that the hearing justice erred in granting the bank's motion for summary judgment, finding that the guarantors were bound by the Connecticut Superior Court's deficiency calculation. Finally, the guarantors assert that the hearing justice erred when he denied Fay's motion to amend his answer without a hearing.

## A

## Motion for Partial Summary Judgment

Before this Court, the guarantors first contend that the hearing justice erred in granting partial summary judgment in favor of the bank, finding the guarantors liable for Stonestreet's debt due on the guaranty. The guarantors argue that, at the time the hearing justice granted that aspect of the bank's motion for partial summary judgment, genuine issues of material fact remained as to whether Connecticut

General Statute § 49-1 acted as a bar to further action on the debt after the bank pursued a judicial foreclosure in Connecticut Superior Court.[4] The guarantors asserted in Rhode Island Superior Court, as they do here, that § 49-1 "bar[red] collateral action for a deficiency against guarantors who were not named in the foreclosure action if they could have been made parties to that action and the guarant[y] was secured by the mortgage."

In addressing the guarantors' argument under Conn. Gen. Stat. § 49-1, the hearing justice looked to an analogous Connecticut case, which both parties have cited. *See JP Morgan Chase Bank, N.A. v. Winthrop Properties, LLC*, 94 A.3d 622 (Conn. 2014). He explained that "the *Winthrop* Court explicitly 'recognized the general principle that a guarant[y] agreement is a separate and distinct obligation from that of the note or other obligation[,]'" (quoting *id.* at 630 (citing *Carpenter v.*

---

[4] Connecticut General Statute § 49-1 states, in relevant part:

> "The foreclosure of a mortgage is a bar to any further action upon the mortgage debt, note or obligation against the person or persons who are liable for the payment thereof who are made parties to the foreclosure and also against any person or persons upon whom service of process to constitute an action in personam could have been made within this state at the commencement of the foreclosure; but the foreclosure is not a bar to any further action upon the mortgage debt, note or obligation as to any person liable for the payment thereof upon whom service of process to constitute an action in personam could not have been made within this state at the commencement of the foreclosure."

*Thompson*, 34 A. 105, 106-07 (Conn. 1895))), and that "it is almost universally recognized in other jurisdictions that a guarantor's liability does not arise from the debt or other obligation secured by the mortgage; rather, it flows from the separate and distinct obligation incurred under the guarant[y] contract." *Id.* at 631. Applying the principles set forth in *Winthrop*, the hearing justice concluded that the guarantors "were not proper parties to the foreclosure action." Thus, Conn. Gen. Stat. § 49-1 did not afford them protection.

Ultimately, however, the hearing justice based his decision on his finding that Rhode Island law, not Connecticut law, governed the guarantors' liability under the guaranty. In making this determination, he noted the choice-of-law clause present in the guaranty, which provides:

> "This Agreement and the rights and obligations of the parties hereunder shall in all respects be governed and construed and enforced in accordance with the internal laws of the State of Rhode Island, without giving effect to principles of conflicts of law [*sic*]. In addition, the fact that portions of the Loan Documents may include provisions drafted to conform to the law of the State of Connecticut is not intended, nor shall it be deemed, in any way to derogate the parties' choice of law as set forth herein."

As such, he determined that Conn. Gen. Stat. § 49-1 was not applicable and that Rhode Island law governs the issue. We agree.

Parties are generally "permitted to agree that the law of a particular jurisdiction will govern their transaction." *DeFontes v. Dell, Inc.*, 984 A.2d 1061,

- 10 -

1066 (R.I. 2009) (quoting *Terrace Group v. Vermont Castings, Inc.*, 753 A.2d 350, 353 (R.I. 2000)). "Choice-of-law provisions are valid and enforceable in nearly all jurisdictions that have passed upon them." *DeCesare v. Lincoln Benefit Life Company*, 852 A.2d 474, 481 (R.I. 2004). Furthermore, "[t]his Court previously has held that choice-of-law provisions are enforceable if the intention of the parties to stipulate to the jurisdiction is made clear by *express language* or by the 'facts and circumstances attending the making of the contract.'" *Id.* (quoting *Owens v. Hagenbeck-Wallace Shows Co.*, 58 R.I. 162, 173-74, 192 A. 158, 164 (1937)).

The guarantors assert that the forbearance agreement, signed by both Stonestreet and the guarantors, required that they stipulate to a Connecticut "Strict Foreclosure" proceeding, which the guarantors argue creates a genuine issue of fact as to the applicability of Conn. Gen. Stat. § 49-1. The forbearance agreement, in its choice-of-law provision, specifically states that it "is executed and delivered in the State of Connecticut * * * and it is the desire and intention of the parties that *it* be in all respects interpreted according to the laws of the State." (Emphasis added.)

"In determining whether a contract is ambiguous, a court should read the contract in its entirety and 'give words their plain, ordinary, and usual meaning.'" *Roadepot, LLC v. Home Depot, U.S.A., Inc.*, 163 A.3d 513, 519 (R.I. 2017) (quoting *Botelho v. City of Pawtucket School Department*, 130 A.3d 172, 176 (R.I. 2016)). "In situations in which the language of a contractual agreement is plain and

- 11 -

unambiguous, its meaning should be determined without reference to extrinsic facts or aids." *Id.* (brackets omitted) (quoting *Botelho*, 130 A.3d at 176-77). The plain language of these documents clearly indicates that the parties intended that Rhode Island law govern the guaranty and that Connecticut law govern the forbearance agreement. *See id.* (noting that "a reviewing court should not seek out ambiguity where there is none"). In paragraph thirteen of the forbearance agreement, entitled "Guarantor's Representations and Warranties[,]" each of the guarantors "reaffirms all of his representations and warranties set forth in the [l]oan [d]ocuments[,]" which explicitly includes the guaranty. Furthermore, the same section states that the forbearance agreement "does not contravene" any other contract or agreement to which the guarantors are a party and that "the [g]uaranty, and the other [l]oan [d]ocments executed by [the guarantors] are fully enforceable by their terms." Moreover, had the parties desired that Connecticut law govern the enforceability of the guaranty, they could have drafted the guaranty accordingly.

It is clear to us that Rhode Island law governs the issue of whether the guarantors are liable under the guaranty and that Conn. Gen. Stat. § 49-1 is not applicable. The guarantors have raised no arguments indicating that they would not be bound by the guaranty under Rhode Island law. As such, it is our opinion that the hearing justice did not err in granting summary judgment in favor of the bank

with respect to the guarantors' liability to the bank for any and all indebtedness due under the guaranty.

**B**

**Motion for Summary Judgment**

Next, the guarantors argue that the hearing justice erred in granting the bank's motion for summary judgment by finding that the guarantors were bound by the deficiency calculation rendered by the Connecticut Superior Court. The guarantors reason that they were not parties to the Connecticut litigation and, therefore, they should not be bound by the order in that case. The guarantors also assert that the hearing justice acted inconsistently with his earlier decision on the bank's motion for partial summary judgment because, although he found the guaranty and mortgage to be *separate* obligations, he still found that the guarantors were in privity with Stonestreet and therefore bound by the Connecticut deficiency judgment.

While the hearing justice found the guarantors liable for the amount adjudicated in Connecticut under six legal theories, we deem it unnecessary for this Court to examine all six because it is clear to us that the guarantors are liable under the doctrine of *res judicata*, otherwise known as claim preclusion. "It has long been established that 'full faith and credit generally requires every State to give a judgment at least the res judicata effect which the judgment would be accorded in the State which rendered it.'" *Lamarque v. Fairbanks Capital Corp.*, 927 A.2d 753,

- 13 -

760 (R.I. 2007) (brackets omitted) (quoting *Hospitality Management Associates, Inc. v. Shell Oil Co*., 591 S.E.2d 611, 616 (S.C. 2004), *cert. denied*, 543 U.S. 916 (2004)). In giving full faith and credit to the Connecticut Superior Court, we apply Connecticut law to the *res judicata* issue in this case. *See id.*

The Connecticut Supreme Court has noted that "[u]nder the doctrine of res judicata, a final judgment, when rendered on the merits, is an absolute bar to a subsequent action between the same parties or *those in privity with them*, upon the same claim[.]" *Weiss v. Weiss*, 998 A.2d 766, 783 (Conn. 2010) (deletions omitted) (emphasis added) (quoting *Rocco v. Garrison*, 848 A.2d 352, 361 (Conn. 2004)). "A key consideration in determining the existence of privity is the sharing of the same legal right by the parties allegedly in privity." *Girolametti v. Michael Horton Associates, Inc.*, 208 A.3d 1223, 1229 (Conn. 2019) (quoting *Mazziotti v. Allstate Insurance Company*, 695 A.2d 1010, 1017 (Conn. 1997)). The primary consideration is an equitable one, meaning that "the interest of the party to be precluded must have been sufficiently represented in the prior action so that the application of res judicata is not inequitable." *Id.* (brackets omitted) (quoting *Wheeler v. Beachcroft, LLC*, 129 A.3d 677, 690 (Conn. 2016)).

Furthermore, the Connecticut Supreme Court has generally held that "a judgment in an action involving a party who is an officer, director, stockholder, or member of a non-stock corporation does not have preclusive effects on the

- 14 -

corporation itself." *Joe's Pizza, Inc. v. Aetna Life and Casualty Company*, 675 A.2d 441, 445 (Conn. 1996) (brackets omitted) (quoting Restatement (Second) *Judgments* § 59 at 93-94 (1982)). "This rule of general applicability, however, is subject to an exception for corporations that are closely held[.]" *Id.*; *see* Restatement (Second) *Judgments* § 59(3) at 94. "If the corporation is closely held, in that one or a few persons hold substantially the entire ownership in it, the judgment in an action by [or against the corporation or] the holder of ownership in it is conclusive upon the [other of them] as to issues determined therein[.]" *Id.* (quoting Restatement (Second) *Judgments* § 59(3)(b) at 94). In that situation, "[t]he judgment in an action by or against the corporation is conclusive upon the holder of its ownership if he [or she] actively participated in the action on behalf of the corporation, unless his [or her] interests and those of the corporation are so different that he [or she] should have opportunity to relitigate the issue[.]" Restatement (Second) *Judgments* § 59(3)(a) at 94.

The parties do not dispute that the guarantors were not parties to the Connecticut Superior Court proceedings and that the court issued a final judgment. We agree with the hearing justice, however, that there was "no issue of material fact with regard to whether [the guarantors] are in privity with Stonestreet" and that the guarantors' rights were adequately represented in the Connecticut proceedings. The guarantors were the sole owners of Stonestreet, with Fay as both the majority owner

- 15 -

and manager, clearly indicating that the corporation was closely held. *See* Restatement (Second) *Judgments* § 59(3) at 94. Indeed, Fay acknowledged in his deposition that he directed the Connecticut litigation on behalf of Stonestreet. *See id.* Furthermore, Patrick clearly shared common legal interests with Fay and Stonestreet, as he adopted Fay's legal positions at each level of litigation. Finally, Attorney Eric Henzy, who represented Stonestreet in Connecticut, was permitted to represent Fay in Rhode Island Superior Court. The *pro hac vice* application states that Attorney Henzy represented "the interests of [Fay] in a companion case, with substantially similar issues in the State of Connecticut." This evidence clearly indicates that the guarantors were in privity with Stonestreet and, as such, *res judicata* bars further litigation of the claim by the guarantors.

Therefore, the hearing justice did not err in finding that the guarantors were bound by the deficiency judgment rendered by the Connecticut Superior Court.

## C

### Motion to Amend Answer

Finally, the guarantors argue that the hearing justice erred when he denied Fay's motion to amend his answer without a hearing or explanation. While this motion does not appear on the Superior Court docket, our review of the record

- 16 -

indicates that the hearing justice denied Fay's motion to amend his answer when he granted the bank's motion for partial summary judgment.[5]

Again, "Rule 15(a) of the Superior Court Rules of Civil Procedure states that 'leave [to amend] shall be freely given when justice so requires.'" *CACH, LLC*, 154 A.3d at 942. Our comparison of Fay's answer and his proposed amended answer reveals that Fay sought to add a single affirmative defense—the argument discussed *supra* regarding the applicability of Conn. Gen. Stat. § 49-1. This argument was clearly the focal point for the hearing justice's June 29, 2018 decision granting the bank's motion for partial summary judgment, which indicates to us that Fay was able to raise that defense and argue its applicability before the hearing justice. The hearing justice, with whom we agree, decided, however, that Conn. Gen. Stat. § 49-1 did not apply to the factual scenario before him, because Rhode Island law clearly governed the agreement.

Additionally, Fay and the bank appear to have each submitted memoranda on the issue of the motion to amend. Although the hearing justice did not specifically address the motion to amend in his June 29, 2018 decision, he did address quite thoroughly the argument that Fay sought to raise regarding the applicability of Conn. Gen. Stat. § 49-1, and he noted the denial of the motion to amend in his July 5, 2018

---

[5] The record transmitted by the Superior Court does not contain a copy of the motion to amend or the related memoranda and objections. We were, however, provided copies of those documents by the bank in its appendix.

order.  Clearly, his analysis in that decision directly pertained to the affirmative defense that Fay sought to raise with his amended answer.  Furthermore, nothing in Rule 15 or our own jurisprudence indicates to us that a hearing is required on such motions.  We are thus satisfied that the hearing justice did not err in denying Fay's motion to amend.

## IV

## Conclusion

For the foregoing reasons, the judgment of the Superior Court is affirmed. The papers in this case may be remanded to that tribunal.



**STATE OF RHODE ISLAND**

**SUPREME COURT – CLERK'S OFFICE**

Licht Judicial Complex
250 Benefit Street
Providence, RI 02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Bank of America, N.A. v. Timothy G. Fay et al. |
| **Case Number** | No. 2019-126-Appeal.<br>No. 2019-139-Appeal.<br>(PC 16-1618) |
| **Date Opinion Filed** | December 11, 2020 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, and Robinson, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Michael A. Silverstein |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Richard L. Gemma, Esq.<br>Robert D. Wieck, Esq. |
| | For Defendants:<br><br>Thomas M. Dickinson, Esq.<br>Timothy J. Morgan, Esq.<br>William Kenneth O'Donnell, Esq. |